In the Matter of EMORY
PROPERTIES, LTD.,
Debtor.

**Bankruptcy No. A89–04591–ADK.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 27, 1989.

Benjamin C. Abney, Abney, Tate & Mallernee, Atlanta, Ga., for debtor.

Grant Stein, Alston & Bird, Atlanta, Ga., for Emory University.

Mark Kaufman, Long, Aldridge & Norman, Atlanta, Ga., for Amsouth.

## AMENDED ORDER

### A. DAVID KAHN, Chief Judge.

The above-styled Chapter 11 bankruptcy case is before the Court on a Motion for Relief from Stay filed by Amsouth Bank of Florida [hereinafter "Amsouth"], which holds a first priority lien on the Debtor's leasehold interest in certain real property and all income generated by the property. A hearing on said Motion was held on September 7, 1989. In addition to counsel for the Debtor and Amsouth, counsel for Emory University appeared at said hearing. Emory University [hereinafter "Emory"] has also filed a Motion for Relief from Stay in which it contends that the lease in question has been automatically rejected as

a matter of law pursuant to 11 U.S.C. § 365(d)(4). Although it was not mentioned in Amsouth's Motion, this issue was raised at the September 7, 1989 hearing.[1] As a ruling adverse to the Debtor on the § 365(d)(4) issue would moot all other matters in the two Relief from Stay Motions before the Court, the Court requested briefs from the Parties.

The Court finds this matter to be a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Court has reviewed the briefs filed by the Debtor, Amsouth, Emory, and Bank One of Merrillville, NA [hereinafter "Bank One"][2] and now makes the following findings of fact and conclusions of law.

## I.

The material facts are undisputed. The Lease in question [hereinafter "the Lease"] was originally entered into in 1964 between Emory and Emory Inn, Inc. It demised approximately 4.6 acres of commercial real estate located in Dekalb County, Georgia. The Debtor became the lessee through a series of assignments. The initial term of the Lease is 26 years with an option for renewal for an additional 26 year term. It appears that the Debtor has exercised its option for the additional term.

The Debtor presently operates a hotel located on the premises known as the Stafford Emory Inn. The Lease calls for a minimum annual rental of $11,300, payable in equal installments, with an additional "premium rental" if the hotel achieves a certain level of occupancy and income. The Lease also provides that the premises are to be used exclusively for hotel purposes unless some other use is agreed to by the lessor and lessee. The lessee has the right, subject to the use requirements under the Lease and applicable laws and regulations, to construct or demolish any im-

---

1. In its Motion, Amsouth based its request for relief from the automatic stay on allegations that the Debtor had no equity in the property; that it was not necessary to an effective reorganization; and that the Debtor lacked good faith. It is unclear from the record before the Court why Amsouth is now so zealously arguing that the Lease in question, which is Amsouth's secur-

ity, has been terminated pursuant to § 365(d)(4).

2. Bank One holds a second priority security deed on the leasehold and has filed a brief in support of the Debtor's position that § 365(d)(4) does not apply to the Lease in question.

provements on the premises at its own cost. The Lease permits subletting and also authorizes the lessee to mortgage the leasehold interest, subject to the consent of the lessor.

Upon termination of the Lease, the lessee is required to vacate and surrender the premises and any improvements thereon to the lessor. The lessee has no right to purchase the leased property at the end of the lease term.

The Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code on May 1, 1989. On September 6, 1989, the Debtor filed a motion to extend the 60–day time period contained in § 365(d)(4) to assume an unexpired lease of nonresidential real property. As the request to extend was outside the 60–day period, the Court denied the Debtor's Motion. *See* Order entered Sept. 11, 1989. *See also Mutual Life Ins. Co. of N.Y. v. Dublin Pub, Inc. (In re Dublin Pub )*, 81 B.R. 735 (Bankr.N. D.Ga.1988).

## II.

The issue before the Court is whether § 365(d)(4) is applicable to the Lease. If it is, then the Lease has been automatically rejected by the Debtor's failure to file a motion to assume it within 60 days from the date of the entry of the order for relief. Section 365(d)(4) provides that

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within

such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

■ The Debtor contends that § 365(d)(4) does not apply to this Lease for several reasons. First, it argues that the Lease is of *residential* real property. The Debtor bases this contention on the fact that the chef, the maintenance man, and the general manager of the hotel live on the premises year-round.[3] The Debtor further asserts that the hotel is a type of temporary residence for travelers. Debtor's "Brief in Response to Stafford Emory Inn's [sic] Motion for Relief from the Automatic Stay" at 3. The Debtor relies on this Court's recent Order in *In re Terrace Apartments, Ltd.*, 107 B.R. 382 (Bankr. N.D.Ga.1989) in which the Court held that an apartment complex owned by the Debtor was residential in nature and therefore not subject to § 365(d)(4).[4]

The Court finds that a hotel is nonresidential within the meaning of § 365. The term "nonresidential" is not defined in the Bankruptcy Code. Therefore, the Court must use its "common and approved usage." 2A Sutherland Statutory Construction § 46.01 at 74 (4th ed.). "Residential" means "of or pertaining to residence or residences" and "residence" means "the place, esp. the house, in which a person lives or resides; dwelling place; home." The Random House College Dictionary at 1123 (rev. ed. 1975). A hotel is not residential in the same way an apartment complex is in that people actually reside and make their homes in the latter whereas they just temporarily stay in the former. The fact that three employees may live on

---

**3.** Although the Debtor offered no proof of its assertion that these employees live year-round on the premises and Amsouth has challenged this assertion, for the purposes of determining the issues before the Court today, the Court will accept the Debtor's contentions as true.

**4.** In *Terrace Apartments,* this Court relied, in part, upon *In re Independence Village, Inc.,* 52 B.R. 715 (Bankr.E.D.Mich.1985) for reaching the conclusion that an apartment complex was residential real property for the purposes of

§ 365(d)(4). Emory argues that this Court relied on mere dicta contained in *Independence Village* for reaching this result. Emory's "Brief on the Issue of Applicability of 11 U.S.C. § 365(d)(4) to that Certain Lease Dated August 15, 1964" at 8. A more careful reading of *Independence Village* will reveal that that court's interpretation of "residential real property" in the context of § 365 litigation was an alternate holding and not simply dicta as Emory asserts. 52 B.R. at 720.

the premises does not convert the Debtor's hotel into residential real property.

■ The Debtor next argues that the Lease in question is not a "true lease" for the purposes of § 365(d)(4). *See* Debtor's "Brief in Response to Stafford Emory Inn's [sic] Motion for Relief from the Automatic Stay" at 4. It contends that the Lease created, under Georgia law, an estate for years. Section 44–7–1 of the Official Code of Georgia Annotated provides that

(a) The relationship of landlord and tenant is created when the owner of real estate grants to another person, who accepts such grant, the right simply to possess and enjoy the use of such real estate either for a fixed time or at the will of the grantor. In such a case, no estate passes out of the landlord and the tenant has only a usufruct which may not be conveyed except by the landlord's consent and which is not subject to levy and sale.

(b) All renting or leasing of real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, to pass no estate out of the landlord, and to give only the usufruct unless the contrary is agreed upon by the parties to the contract and is so stated in the contract.

Thus, where the term of a lease is greater than five years, a rebuttable presumption arises that an estate for years is created. *Camp v. Delta Airlines, Inc.*, 232 Ga. 37, 39, 205 S.E.2d 194 (1974).

In the Lease before the Court, the Parties specifically agreed that their relationship would be that of landlord/tenant. Article Seventeen of the Lease provides that

Notwithstanding the agreement herein contained for the payment by the Lessee of additional rent based upon a part of gross room revenues, as above provided, it is expressly understood that the Lessor shall not be construed or held to be a partner or associate of the Lessee in the conduct of its business, it being express-

ly understood and agreed that the relationship between the parties hereto is and shall at all times remain that of Landlord and Tenant. Nothing in this Lease shall serve to convey an interest in land in the Lessee.

Lease at 17, attached as Exhibit to the Debtor's "Brief in Response to Stafford Emory Inn's [sic] Motion for Relief from the Automatic Stay."

Although the Lease itself has some attributes of an estate for years such as providing that the lessee is responsible for taxes on the property[5] and containing provisions regarding foreclosure by a mortgagee of the leasehold,[6] the Court finds that it also has attributes of a usufruct. For example, Article Two restricts the use of the premises by the lessee. On balance and in light of the strong statement of intention contained in Article Seventeen of the Lease, the Court finds that the Lease conveyed a usufruct under Georgia law.

■ However, the Court finds that, even if it were to be determined that the Lease conveyed an estate for years, § 365(d)(4) would still be applicable. Under Georgia law, both estates for years and usufructs are created by leases. Section 365(m) provides that "[f]or the purposes of this section 365 and sections 541(b)(2) and 362(b)(10), leases of real property shall include *any* rental agreement to use real property." § 365(m) (emphasis added). Therefore, the Court finds that, for the purposes of § 365(d)(4), a lease of "nonresidential real property" includes a lease which creates an estate for years.

The Debtor also contends that the Lease before the Court is not the type of agreement which Congress intended to reach through § 365. It relies upon the cases of *Liona Corp. v. PCH Assoc. (In re PCH Assoc.)*, 804 F.2d 193 (2nd Cir.1986); *In re Independence Village, Inc.*, 52 B.R. 715 (Bankr.E.D.Mich.1985); and *City of San Francisco Market Corp. v. Walsh, (In re*

---

5. *See* Article Seven of Lease, attached as Exhibit to the Debtor's "Brief in Response to Stafford Emory Inn's [sic] Motion for Relief from the Automatic Stay."

6. *See* Article Twenty–One of Lease attached as Exhibit to the Debtor's "Brief in Response to Stafford Emory Inn's Motion for Relief from the Automatic Stay."

*Moreggia & Sons, Inc.*), 852 F.2d 1179 (9th Cir.1988). These cases, however, are readily distinguishable from the case *sub judice.* The court in *PCH Assoc.* found that the sale-leaseback arrangement in question was actually a joint venture agreement. In *Independence Village,* the court found that the "Lease Purchase Contract" at issue was in essence a security agreement not subject to § 365. 52 B.R. at 720. Finally, the holding in *Moreggia & Sons, Inc.* must be limited to its peculiar facts where the lease in question resulted from the debtor being relocated as part of a municipal development project. In the case *sub judice,* unlike in the cases above, there is nothing to distinguish this Lease from other leases which come within the scope of § 365(d)(4).

 The Debtor finally argues that the Court should use its equitable powers to save the Lease from the application of § 365(d)(4) "because of the impact forfeiture would have on the estate of the debtor." Debtor's "Brief in Response to Stafford Emory Inn's [sic] Motion for Relief from the Automatic Stay" at 10. As this Court found in the case of *Mutual Life Ins. Co. of N.Y. v. Dublin Pub, Inc. (In re Dublin Pub, Inc.),* 81 B.R. 735, 737 (Bankr. N.D.Ga.1988), once § 365(d)(4) is found to be applicable to the Lease in question, this Court cannot step in and rewrite the statute. Although the result may be grave for the Debtor, the Debtor could have prevented automatic rejection of the Lease under § 365(d)(4) by simply timely filing a motion to accept the Lease or a motion for an extension of time within which to accept or reject the Lease.

Therefore, the Court finds that the Lease has been automatically rejected as a matter of law pursuant to § 365(d)(4). Emory is entitled to relief from the automatic stay to pursue its remedies under state law, and it is also entitled to immediate possession of the property pursuant to § 365(d)(4). The automatic stay will also be lifted as to Amsouth to pursue any remedies it may have against the Debtor regarding the rejection of the Lease.

Thus, in accordance with the reasoning above, IT IS THE ORDER OF THE COURT that the Motion for Relief from Stay and for Other Relief filed by Emory University be, and the same hereby is, GRANTED. The automatic stay is hereby lifted to allow Emory University to pursue its remedies under state law against the Debtor. Furthermore, the Debtor is hereby directed to immediately surrender the premises to Emory University.

IT IS THE FURTHER ORDER OF THE COURT that the Motion for Relief from Stay filed by Amsouth Bank of Florida be, and the same hereby is, GRANTED.

IT IS SO ORDERED.